HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED TRANSPORTATION UNION, and RICHARD D. KITE, <br><br> Plaintiffs, <br><br> v. <br><br> BNSF RAILWAY COMPANY, <br><br> Defendant. | Case No. 10-CV-05808-RBL <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS <br> (Dkt. #12) |

**I. INTRODUCTION**

This matter is before the Court upon Defendant's Motion to Dismiss for Lack of Jurisdiction pursuant to Rule 12(b)(1), or in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). (Dkt. #12.) Plaintiff United Transportation Union (UTU) is the national labor union authorized to represent trainman-conductors employed by Defendant BNSF Railway Company (BNSF). Plaintiff Richard Kite is a former trainman-conductor for BNSF who was terminated after a breathalyzer detected alcohol in his system at the beginning of a shift.

Plaintiffs challenged Kite's termination in two separate arbitrations. The first arbitration did not produce an award and the second arbitration produced an award in BNSF's favor. Nevertheless, Plaintiffs seek review of "the two sequential Awards." (Compl. ¶1.) Kite also

ORDER - 1

seeks to recover double penalty wages pursuant to a Washington statute prohibiting willful withholding of wages (the wage claim) and damages for tortious interference with a contractual relationship (the tort claim). The entire dispute hinges on a corrupt threat BNSF allegedly made at the first arbitration. Plaintiffs' theory of recovery is that the first arbitration would have produced an award in Plaintiffs' favor, but BNSF threatened the arbitrator with financial ruin, so she never issued an award.

In support of its Rule 12(b)(1) Motion to Dismiss, BNSF argues the Court does not have subject matter jurisdiction over the first arbitration because that arbitration did not produce an award. In support of its Rule 12(b)(6) Motion to Dismiss, BNSF argues that the facts alleged do not amount to fraud or corruption under the Railway Labor Act (RLA), and even if they did, UTU waived this corruption argument by not presenting it at the second arbitration. Finally, BNSF argues Kite's wage and tort claims are preempted by the RLA because the second arbitration conclusively determined Kite's termination was warranted under the Collective Bargaining Agreement (CBA).

Plaintiffs respond that there are factual questions precluding a 12(b)(1) dismissal, and that they have properly stated a claim for which relief can be granted. Plaintiffs ask the Court to allow discovery so that they can pursue their claims of corruption and show that UTU did not waive the corruption argument. Finally, Kite argues his wage and tort claims are not preempted because these claims do not involve an interpretation of the CBA.

## II. BACKGROUND

### A. The Railway Labor Act and Public Law Boards

Congress passed the Railway Labor Act (RLA) in 1926 to keep the trains running. The central goal of the RLA is to resolve labor disputes fairly and efficiently so that transportation

service remains uninterrupted. In 1966, Congress amended the RLA to allow for the creation of Public Law Boards (PLB) to resolve labor disputes. Essentially, PLBs are three-member arbitration boards chosen by the parties. In this case, the PLBs consisted of UTU representative Jay Schollmeyer, BNSF representative Roger Boldra, and a neutral arbitrator assigned by the National Mediation Board (NMB). PLBs are meant to resolve railway labor disputes out of court, but district courts may review PLB awards in limited situations. A district court may review a PLB award when the parties use fraud or corruption to obtain the award. 45 U.S.C. § 153 first Q; *Union Pac. R.R. v. Sheehan*, 439 U.S. 89 (1978).

**A. The Zimmerman Arbitration – PLB 7204**

On January 17, 2005, BNSF performed a random breathalyzer test on Kite as he prepared to board a train. This test revealed a blood alcohol level of .029, and another test twenty minutes later revealed a blood alcohol level of .027. BNSF held an internal investigative hearing on February 25, 2005 that determined Kite was in violation of Rule 1.5 of its Consolidated Code of Operating Rules. The hearing also determined Kite had a previous "positive test" in 1997 "which merited a permanent dismissal from service." BNSF permanently dismissed Kite on March 7, 2005. (Compl. ¶11.) After internal appeals failed to produce a compromise between the parties, Plaintiffs began the formal labor grievance process.

Pursuant to the RLA, the parties established PLB 7204 to hear the dispute on July 31, 2008 in Vancouver, Washington. In attendance were Schollmeyer, Boldra, and Jacalyn Zimmerman, the neutral arbitrator assigned by the NMB. Plaintiffs' Complaint does not provide details about this arbitration.

On November 7, 2008, Zimmerman circulated an unsigned draft that recommended Kite be reinstated. (Compl. Exh. A.) Zimmerman thought Kite's termination was arbitrary and

ORDER - 3

capricious because she found no evidence that Kite had a previous positive test in 1997. Boldra requested an executive session in order for Zimmerman to explain her unsigned draft.

This executive session occurred on February 19, 2009 with Schollmeyer, Boldra, and Zimmerman in attendance. During the session, Boldra allegedly said to Zimmerman, "If you are going to issue these kinds of opinions, you will never work for a Class One railroad again." (Compl. ¶15.)

On April 20, 2009, Zimmerman declared her recusal in a brief announcement. This announcement was signed by Zimmerman and said only, "After due consideration, the Board has determined that this matter should be dismissed without prejudice." (Compl. Exh. B.)

**B. The Peterson Arbitration – PLB 7254**

The dispute was reargued at a second arbitration in Fort Worth, Texas. On April 29, 2010, with Robert E. Peterson sitting as the neutral arbitrator, PLB No. 7254 issued an award addressing Kite's claim. This Award was signed (without dissent) by Schollmeyer, Boldra, and Peterson. (Compl. Exh. C.) The Award stated that Zimmerman had recused herself and was no longer engaged in arbitral services practice. Peterson also explained how the dispute had come before PLB No. 7254 following Zimmerman's recusal:

> When the parties submitted a request to the NMB for the unresolved claim to be placed before this PLB No. 7254, the NMB initially denied the request, stating that the neutral member of PLB No. 7204 had "rendered a decision." In subsequent recognition that the draft findings and award for case No. 4 had not in fact been adopted, and the neural [sic] member of PLB No. 7204 had meantime recused herself from further discussion with the other members of PLB No. 7204 to resolve the dispute, the NMB authorized placement of the claim to PLB No. 7254. (Id. at 2)

The Award denied Kite's claim. Most of the Award is spent refuting Zimmerman's unsigned draft which found Kite had no previous violation in 1997. Unlike Zimmerman, Peterson found ample evidence that Kite had a previous violation. On this

ORDER - 4

basis, Peterson denied Kite's request for reinstatement. The Award does not discuss Boldra's alleged threat at the Zimmerman arbitration. The Award concluded, "The record supporting a finding that the Claimant tested positive two times within a recognized 10 year probationary period for alcohol abuse, there is no question that he subjected himself to dismissal from service." (Id. at 5.) On November 4, 2010, Plaintiffs filed this suit seeking "review of the two sequential Awards," Kite's reinstatement, lost wages, and attorney's fees.

### III. DISCUSSION

The Court must decide the scope of its jurisdiction before deciding whether Plaintiffs have stated a claim for which relief can be granted. *Bell v. Hood*, 327 US 678, 682 (1946).

**A. The Court does not have jurisdiction over the Zimmerman arbitration because PLB 7204 did not issue an award.**

BNSF argues the Court "lacks jurisdiction to review draft awards such as the Zimmerman Opinion." (Mot., Dkt. #12 at 6.) Plaintiffs respond that a jurisdictional dismissal would be inappropriate because their claim is neither frivolous nor made solely for the purpose of obtaining federal jurisdiction.

District court jurisdiction over PLB awards is found in 45 U.S.C. § 153 first Q: "If any employee . . . is aggrieved by any of the terms of an **award** or by the failure of the division to include certain terms in such **award**, then such employee" may file for review. (emphases added). A binding PLB award requires two signatures. 45 U.S.C. § 153, First (n) ("A majority vote of all members of the [PLB] shall be competent to make an award."). Jurisdictional dismissals are warranted when the alleged claim under federal statute clearly appears to be made for the sole purpose of obtaining federal jurisdiction or when the claim is wholly insubstantial and frivolous. *Bell v. Hood*, 327 US at 683.

ORDER - 5

Plaintiffs' claim that the RLA grants jurisdiction over the Zimmerman arbitration appears to be insubstantial and frivolous. Plaintiffs attached an unsigned piece of paper to their Complaint and labeled it an "award." The Court is not fooled by this jurisdictional ploy. The Court does not have jurisdiction over the Zimmerman arbitration because that arbitration did not produce an award.

### B. The Court has jurisdiction over the Peterson arbitration because PLB 7254 issued an award.

Unlike the Zimmerman arbitration, the Peterson arbitration produced an Award signed by Schollmeyer, Boldra, and Peterson. (Compl. Exh. C.) Thus, the Court has subject matter jurisdiction to review the Peterson Award. *See* 45 U.S.C. § 153 first Q.

### C. Plaintiffs fail to state a claim for which relief can be granted because the facts alleged do not amount to fraud or corruption under the RLA.

BNSF argues the Complaint must be dismissed because the facts alleged do not amount to fraud or corruption, and if they did, UTU waived this argument by not presenting it at the Peterson arbitration. Plaintiffs respond that they have stated a claim for fraud because Boldra's threat led to Zimmerman's recusal, which in turn prevented an award in their favor.

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper [Rule 12(b)(6)] motion. *Vasquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

"Review of an arbitration award under the RLA is 'among the narrowest known to the law.'" *Pacific & Arctic Railway and Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1147 (9th Cir. 1991) (quoting *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970). Arbitration is conclusive to the parties, and judicial review is limited to situations where (1) the PLB failed to comply with the RLA, (2) the PLB failed to confine itself to matters within its jurisdiction, or (3) the PLB or parties used fraud or corruption to obtain an award. 45 U.S.C. § 153 first Q; *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 93 (1978). Though Boldra's alleged comments are more akin to corruption than fraud, neither the parties nor the Court were able to find cases distinguishing between the two. Under the RLA, "[f]raud properly embraces a situation in which the supposedly neutral arbitrator exhibits a complete unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions." *Pacific & Arctic*, 952 F.2d at 1148.

Plaintiffs fail to state a claim for which relief can be granted because the facts alleged do not amount to fraud or corruption under the RLA. Under the RLA, fraud occurs when the behavior is "used . . . to obtain an award." *Pacific & Arctic*, at 1147. Even if Boldra made the comment, and even if Zimmerman recused herself because of the comment, the alleged corruption did not allow BNSF to obtain an award. The corruption alleged, at most, led only to Zimmerman's recusal, a dismissal without prejudice, and a new arbitration. (Compl. ¶¶15-16.)

The alleged behavior does not amount to the type of fraud defined explicitly in *Pacific & Arctic* because Peterson did not exhibit "a complete unwillingness" to listen to UTU's positions.

*See* 952 F.2d at 1148. Peterson decided the underlying claim on the merits, taking note of Zimmerman's findings and refuting them. (Compl. Exh. C.)

Plaintiffs rely on *Atchison, T. & S.F. Ry. Co. v. Brotherhood of Locomotive Firemen and Enginemen*, which describes a particular type of fraud under the RLA:

> Equally well settled is the rule that one arbitrator or a minority of arbitrators cannot, *after the dispute has been fully submitted to the Board*, defeat an award by resigning, withdrawing, or otherwise refusing to participate in the hearings. Such a resignation or withdrawal *shortly before the time fixed for the expiration of the arbitration*, constitutes a fraud and, as such, defeats its purpose. 26 F.2d 413, 417 (7th Cir. 1928) (emphases added).

*Atchison* does not help Plaintiffs. The type of fraud described by *Atchison* occurs when an arbitrator refuses to issue a timely award with the effect of extinguishing a party's claim as time barred. This is not what happened here. Rather than suffering the extinguishment of his claim, Kite had his claim fully heard at the Peterson arbitration.

The parties spend much of their time arguing about waiver. BNSF asserts UTU did not make the corruption argument to Peterson and that the corruption argument is therefore waived. UTU asserts it made the corruption argument to Peterson. For the purposes of this Motion, the Court must assume UTU made the corruption argument to Peterson and that Peterson ignored it. Even so, that is not fraud or corruption. That is merely a judgment call by Peterson that this Court cannot review. *See* 45 U.S.C. § 153 first Q.

The Court accepts that (1) Boldra made the comment, (2) Zimmerman recused herself because of the comment, (3) UTU presented the corruption argument to Peterson, and (4) Peterson ignored the corruption argument. If all this is true, Plaintiffs still fail to state a claim for which relief can be granted because such a set of circumstances does not amount to fraud or corruption under the RLA. Therefore, Plaintiffs' RLA claims are DISMISSED.

### D. The wage and tort claims are DISMISSED because resolution of these claims would require an interpretation of the CBA that is contrary to the Peterson Award.

BNSF argues Kite's wage and tort claims are preempted by the RLA because these claims require an interpretation of the CBA. UTU responds that these claims are wholly independent of CBA and do not require an interpretation of the CBA.

"[A] state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). So-called "minor disputes" that involve the interpretation or application of an existing CBA must be resolved through dispute resolution mechanisms provided in the Act. *Id.* at 253. This means that a PLB award will preempt a state law claim when the state law claim depends on an interpretation of a CBA that is contrary to the PLB Award. *See Id.*

Kite's wage claim is based on RCW 49.52.050(2), which provides a remedy to employees when an employer willfully pays them less than the amount a contract obligates the employer to pay. Kite's tort claim is based on the common law tort of intentional interference with a contract or business relationship. In Washington, the elements of this tort include, *inter alia*, the existence of a valid contractual relationship and intentional interference causing breach or termination of the relationship. *Hoffer v. State*, 110 Wash.2d 415, 432 (1988).

Both of Kite's claims are preempted by the RLA and foreclosed by the Peterson Award because both of these claims require an interpretation of the CBA that is contrary to the Peterson Award. For Kite to be successful on his wage claim, a court would have to determine that BNSF was obligated to pay Kite a wage under the CBA. For Kite to be successful on his tort claim, a court would have to determine that BNSF breached the CBA. The Peterson Award conclusively determined that BNSF was not obligated to pay Kite a wage and that BNSF did not breach the CBA. Kite could never obtain a judgment in his favor on the wage and tort claims because the

Peterson Award conclusively determined Kite's dismissal was warranted under the CBA. Therefore, Kite's wage and tort claims are DISMISSED.

## IV. CONCLUSION

This Court does not have jurisdiction over the Zimmerman arbitration because it did not produce an award. Conversely, this Court has jurisdiction over the Peterson arbitration because it produced an award.

The Court's review is limited to determining whether BNSF used fraud or corruption to obtain the Award. Accepting the facts in the Complaint as true, Plaintiffs fail to state any claim for which relief can be granted because the facts alleged do not amount to fraud under the RLA. Thus, the RLA claims are DISMISSED.

Kite's wage and tort law claims are preempted by the RLA because the claims rely on an interpretation of the CBA that is contrary to the Peterson Award. Because the Peterson award conclusively determined Kite's dismissal was warranted under the CBA, no judgment is possible on the wage and tort claims. Thus, the wage and tort claims are DISMISSED.

**IT IS SO ORDERED.**

Dated this 25th day of July, 2011.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE